**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RAHSAAN DIANTE PEARSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:17CR361-1 |
| | ) | 1:20CV610 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This Court (per United States District Judge William L. Osteen, Jr.) previously entered a Judgment memorializing Petitioner's sentence of, inter alia, 24 months in prison followed by three years of supervised release, upon a jury's verdict of guilt against him on two counts of theft of mail matter in violation of 18 U.S.C. § 1708 and three counts of possession of stolen mail matter in violation of 18 U.S.C. § 1708, all with offense dates between April 23 and May 3, 2017. (Docket Entry 61 at 1-3; see also Docket Entry 33 (Superseding Indictment); Docket Entry 53 (Verdict).)[1] Petitioner appealed (see Docket Entry 63), but the United States Court of Appeals for the Fourth Circuit affirmed, see United States v. Pearson, 771 F. App'x 211 (4th Cir. 2019). Petitioner thereafter timely filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion"), alleging these five grounds for relief:

---

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case.

1) "Conviction obtained by use of coerced [c]onfession" (Docket Entry 87, ¶ 12.A. ("Ground One"));

2) "Conviction obtained by a violation of the privilege against self-incrimination" (id., ¶ 12.B. ("Ground Two"));

3) "Conviction obtained by a [v]iolation of the [p]rotection against Double Jeopardy" (id., ¶ 12.C. ("Ground Three"));

4) "Conviction obtained by action of a grand or petit [j]ury which was unconstitutional [sic] selected and impaneled" (id., ¶ 12.D. ("Ground Four")); and

5) "Denial of effective assistance of [c]ounsel" (id., ¶ 13 ("Ground Five")).[2]

---

[2] Petitioner completed his original term of imprisonment on or about October 30, 2020. (See Docket Entry 98 at 1.) Shortly thereafter, the Court (per Judge Osteen) revoked Petitioner's supervised release (see Docket Entry 106 at 1) and "committed [him] to the custody of the Bureau of Prisons for a period of sixty (60) days" (id. at 2), followed by 34 months of supervised release (see id.). Petitioner completed that prison term on or about May 9, 2021. (See Docket Entry 114 at 1.) Not long into the reimposed supervised release term, the Court (per Judge Osteen) again revoked Petitioner's supervised release (see Docket Entry 120 at 1), this time "committ[ing him] to the Bureau of Prisons for a period of eight (8) months" (id. at 2), with such custody to begin no later than "January 6, 2022" (id.), but after which Petitioner would face "[n]o further supervised release" (id.). Because Petitioner remained imprisoned under his original prison term when he filed the Section 2255 Motion (see Docket Entry 87, Decl. ¶ (bearing signature date of "June 8, 2020")), he satisfied Section 2255's "in custody" requirement. See United States v. Bryson, 981 F.2d 720, 726 (4th Cir. 1992) ("Whether an individual is in custody for § 2255 purposes is determined at the time the habeas action is filed."). Nor (given that the Section 2255 Motion challenges Petitioner's convictions) has his collateral attack on the Judgment become moot. See id. ("With respect to mootness, as [the petitioner] attacks the validity of the conviction through his

(continued...)

The United States subsequently filed a Motion to Dismiss and Response (Docket Entry 95 ("Dismissal Motion")), which it served on Petitioner by mail on October 2, 2020 (see id. at 7), at an address listed in his Presentence Report (compare id., with Docket Entry 59 at 3), which he also later used in a court document (see Docket Entry 113 at 1). Via letter dated October 5, 2020, the Clerk notified Petitioner of his "right to file a 20-page response in opposition" (Docket Entry 96 ("Roseboro Letter") at 1), as well as "counter-affidavits or . . . other responsive material" (id.), and warned him that "failure to respond or, if appropriate, to file counter affidavits or evidence in rebuttal within the time allowed may cause the [C]ourt to conclude that the [Dismissal Motion's] contentions are undisputed" (id.; see also id. ("[U]nless you file a response in opposition to the [Dismissal M]otion, it is likely your case will be dismissed or summary judgment will be granted in favor of the [United States]. Any response or counter affidavits

_____

[2](...continued)
§ 2255 motion, expiration of his sentence does not moot the action . . . [unless] there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." (internal quotation marks omitted)). Since his completion of his third prison term (which would have occurred no later than September 6, 2022, i.e., eight months after his reporting date of January 6, 2022), Petitioner has not updated his address (see Docket Entries dated Jan. 6, 2022, to present), in contravention of the Local Rules, see M.D.N.C. LR 11.1(b); see also M.D.N.C. LCrR 57.1 (incorporating LR 11.1). Any resulting failure of Petitioner to receive a copy of this Recommendation and a notice of his right to object need not prevent a final ruling after the objection period. See, e.g., United States v. Weeks, Crim. No. 10-21, 2014 WL 12607739, at *1 (E.D. Ky. July 7, 2014) (unpublished).

or other responsive material . . . must be filed within 21 days from the date of service of the [Dismissal M]otion upon you.")).[3] Petitioner did not file any opposition to the Dismissal Motion. (See Docket Entries dated Oct. 2, 2020, to present.)

As "Supporting FACTS" for Ground One, the Section 2255 Motion states in its entirety: "The denial of the suppression hearing of which [Petitioner] spoke of numerous cards of which was [sic] captured on the [b]ody [c]amera of arresting [o]fficer []. Which [sic] was ultimately [p]rior to the [p]olice [s]tation [i]nterrogation on July 31, 2017." (Docket Entry 87, ¶ 12.A.) The Dismissal Motion, however, correctly explains that "[t]his issue was litigated in [Petitioner's] direct appeal, and the [Fourth Circuit] ruled against [him]. Issues that have been litigated and decided on direct appeal may not be raised again on collateral attack." (Docket Entry 95 at 4-5 (internal citation omitted) (referring to Pearson, 771 F. App'x at 212-13, and relying on

_____

[3] The Clerk's Office mailed the Roseboro Letter to Petitioner at the same address it had used in a mailing to him 19 days earlier (compare Docket Entry 96 at 1, with Notice of Manual Mailing dated Sept. 16, 2020), which "[a]ddress [the Clerk's Office] obtained from [the] BOP website" (Notice of Manual Mailing dated Sept. 16, 2020). The Docket does not reflect the return of the Roseboro Letter (or the earlier mailing to Petitioner at that same address). (See Docket Entries dated Sept. 16, 2020, to present.) Moreover, when Petitioner appeared (with counsel) for a revocation hearing on March 11, 2021, at which he both testified (see Docket Entry 112 at 10-23) and allocuted (see id. at 29-32), neither he nor his counsel made any comment about the Section 2255 Motion (much less any comment suggesting that Petitioner failed to receive either the Dismissal Motion or the Roseboro Letter) (see id. at 3-37).

<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976)).)[4]  Accordingly, Ground One fails as a matter of law.

Next, although Grounds Two and Three both purport to target constitutional violations that led to Petitioner's "[c]onviction" (Docket Entry 87, ¶ 12.B. & C.), the "Supporting FACTS" offered for those two claims actually address (1) "[s]tatements that were used during the Revocation Hearing" (<u>id.</u>, ¶ 12.B.), which statements Petitioner allegedly made "[d]uring a visit to the Probation Office [on] December 13, 2013" (<u>id.</u>,[5] and (2) the Sentencing Guidelines used "[a]t the Probation Violation Sentencing Hearing" (<u>id.</u>, ¶ 12.C.).  Per the apt words of the Dismissal Motion, "[i]n [G]rounds [T]wo and [T]hree, [Petitioner thus] raises issues concerning the revocation of probation [in a different] case" (Docket Entry 95 at 5 (referring to <u>United States v. Pearson</u>, No. 1:13CR75-1 (M.D.N.C.))), but "[he] cannot use the instant post-conviction proceeding – which concerns his [convictions following a] February 2018 jury trial [in Case No. 1:17CR361-1] – to attack

_____

    [4] Indeed, since <u>Boeckenhaupt</u>, the Fourth Circuit repeatedly has reiterated "that [a habeas petitioner] cannot 'circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion.'"  <u>United States v. Dyess</u>, 730 F.3d 354, 360 (4th Cir. 2013) (ellipsis omitted) (quoting <u>United States v. Linder</u>, 552 F.3d 391, 396 (4th Cir. 2009), and citing <u>United States v. Roane</u>, 378 F.3d 382, 396 n.7 (4th Cir. 2004), as well as <u>Boeckenhaupt</u>).

    [5] As previously documented, Petitioner committed the offenses which resulted in the convictions recorded in the Judgment at issue here between April 23 and May 3, 2017, i.e., long after he made the statements to which Ground Two cryptically alludes (which allegedly impacted a revocation hearing).

the revocation of probation in Case No. 1:13CR75-1" (id.; see also Docket Entry 91 at 1-2 (tracing history of Petitioner's collateral filings, including some which the Court (per the undersigned Magistrate Judge) concluded "[Petitioner] intended . . . to attack his conviction or sentence in [ C]ase [No. 1:13CR75-1]," resulting in "docket[ing of] them in [Case No.] 1:13CR75-1, where they [separately have] proceed[ed]")). See Rule 2(d), Rules Governing Sect. 2255 Proceedings ("A moving party who seeks relief from more than one judgment must file a separate motion covering each judgment."). As concerns the Judgment in this case (the only proper object of the Section 2255 Motion), the Court therefore should deny relief on Grounds Two and Three.

Ground Four, in turn, asserts that Petitioner's "[c]onviction [was] obtained by action of a grand or petit [j]ury which was unconstitutional [sic] selected and impaneled" (Docket Entry 87, ¶ 12.D.), because the "Superseding Indictment was signed off by the same fore-person, and of which [sic] would be collusion between the Prosecutor, Judge, and the fore-person" (id.). The Indictment and the Superseding Indictment both originated in the same calendar year (see Docket Entry 1 at 1 (bearing file-stamp date of September 25, 2017); Docket Entry 33 at 1 (bearing file-stamp date of December 19, 2017)), and thus the mere fact that they both bear the signature of the same foreperson warrants no inference of impropriety, see Fed. R. Crim. P. 6(c) ("The court will appoint one

6

juror as the foreperson . . . . The foreperson . . . will sign all indictments."); Fed. R. Crim. P. 6(g) ("A grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service. An extension may be granted for no more than 6 months, except as otherwise provided by statute."). In sum, Ground Four's "allegations of [] collusion are without merit and [] represent mere conclusions unsupported by the record or exhibits." Marcusse v. United States, 785 F. Supp. 2d 654, 667 (W.D. Mich. 2011); see also Davis v. United States, 311 F.2d 495, 496 (7th Cir. 1963) ("Vague conclusional charges of fraud or collusion in Section 2255 petitions are insufficient to raise issues that demand inquiry.").

Lastly, Ground Five presents a claim for "[d]enial of effective assistance of [c]ounsel." (Docket Entry 87, ¶ 13.) To prevail on that claim, Petitioner must prove that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-96 (1984). Making such a showing "is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also id. ("[T]he standard for judging counsel's representation is a most deferential one."); Strickland, 466 U.S. at 694 (defining prejudice as "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

To support Ground Five, the Section 2255 Motion alleges that "[Petitioner's] counsel made [an] affirmative statement during a bench conference confirming [Petitioner's] identity in the video[ d]uring [his] trial on December 11, 2017. . . . Counsel never objected to the 3 priors sentenced on December 07, 2007[.]" (Docket Entry 87, ¶ 13; see also id. ("This same Trial Judge denied [Petitioner] the right to fire [his c]ounsel after these factors[, w]hich ultimately shows [m]iscarriage of [j]ustice and effective [sic] [a]ssistance of [c]ounsel.").)[6] The first of those two allegations falls short, because (as the Dismissal Motion notes) "th[at] trial ended in a deadlocked jury, [such that] there was no prejudice to [Petitioner]" (Docket Entry 95 at 5; see also Minute Entry dated Dec. 14, 2017 ("Jury returned at 2:35 p.m. and reported they were unable to reach a verdict; Foreperson confirmed the jury was deadlocked; Court declares a mistrial[.]")), and, furthermore, "[he has] fail[ed] to show how this statement [by his] counsel had any effect on the December 2017 trial or in subsequent proceedings" (Docket Entry 95 at 5 (citing Strickland, 466 U.S. at 698)). See

_____

[6] A refusal by the Court to permit Petitioner to discharge his (appointed) counsel logically undermines (rather than supports) any allegation of ineffectiveness, i.e., if Petitioner had shown that his counsel had performed deficiently, the Court would have ordered substitution of appointed counsel and, conversely, by refusing to order substitution of appointed counsel, the Court necessarily concluded that Petitioner had not shown any deficiency by counsel.

<u>United States v. Basham</u>, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)).[7]

Ground Five's second (bare) factual allegation that his "[c]ounsel never objected to the 3 priors sentenced on December 07, 2007" (Docket Entry 87, ¶ 13 (referring to convictions documented in Docket Entry 59, ¶¶ 44-46); <u>see also</u> Docket Entry 59, Addendum ("The defendant has no objections.")) likewise provides no basis for a finding of ineffective assistance of counsel, <u>see, e.g.</u>, <u>Hagins v. United States</u>, Nos. CR3:03-1086, 3:04-23312, 2005 WL 2654236, at *3 (D.S.C. Oct. 17, 2005) (unpublished) (denying claim that "counsel was ineffective for failing to object to [Guidelines] enhancement" because the petitioner "advance[d] no evidence" and did "not show that th[e] court would have sustained any objection"); <u>see also</u> <u>Cano v. United States</u>, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) ("[The p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the <i>Strickland</i> analysis.") (Dietrich, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).

---

[7] Notably, the page from the transcript of the trial proceedings on December 11, 2017, which Petitioner appended to the Section 2255 Motion, confirms that his counsel did not concede anything before the jury. (<u>See</u> Docket Entry 87-1 at 13.)

For all of the foregoing reasons, Petitioner has failed to establish entitlement to collateral relief.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 95) be granted and that the Section 2255 Motion (Docket Entry 87) be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 4, 2023